The STATE of Ohio, Appellee,

v.

COTTON, Appellant.

[Cite as *State v. Cotton* (1996), 113 Ohio App.3d 125.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950288.

Decided June 26, 1996.

128

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *L. Susan Laker,* Assistant Prosecuting Attorney, for appellee.

*Sirkin, Pinales, Mezibov & Schwartz, H. Louis Sirkin, Laura A. Abrams* and *Lisa A. Sullivan,* for appellant.

GORMAN, Judge.

Following trial to a jury, defendant-appellant, Ricky Cotton, stands convicted of the rape, gross sexual imposition, and felonious sexual penetration of five adolescent female patients of the Millcreek Psychiatric Center for Children. Raising six assignments of error, Cotton alleges that (1) the trial court erred by admitting evidence of his alleged prior sexual misconduct, in violation of the Evidence Rules and the rape-shield statutes; (2) the trial court improperly limited cross-examination of a key complaining witness; (3) prosecutorial misconduct deprived him of a fair trial; (4) judicial misconduct deprived him of a fair trial; (5) the trial court erred in denying his motion for judgment of acquittal; and (6) the accumulation of errors deprived him of a fair trial.

From 1985 through 1994, Cotton was a therapeutic program worker at Millcreek Psychiatric Center, a state-run inpatient facility for children with psychiatric and emotional problems. In 1994, in response to complaints lodged by a former patient, the Ohio Highway Patrol began an investigation of Cotton. The grand jury of Hamilton County ultimately returned a thirteen-count indictment. Cotton was convicted of five counts of rape, in violation of R.C. 2907.02, three

counts of gross sexual imposition, in violation of R.C. 2907.05, and one count of felonious sexual penetration, in violation of R.C. 2907.12. Prior to trial, three counts of felonious sexual penetration and one count of gross sexual imposition were dismissed.

By pretrial motion, Cotton claimed that the long histories of significant drug abuse, the long-standing diagnoses of mental illness, the related courses of treatment which included pharmacological and electric-shock therapies, and the extensive confinements to psychiatric facilities of these complaining witnesses rendered them incompetent to testify.

Evid.R. 601(A) establishes a presumption that every person is competent to be a witness. The trial court reserved ruling on Cotton's motion and provided for an extensive voir dire of each witness, out of the hearing of the jury, prior to receiving testimony. The court, noting that persons suffering from emotional or psychological illness are not automatically rendered incompetent to testify, found each competent to testify. The trial judge is in the best position to view and hear a witness and to determine the witness's understanding of the events in question and her understanding of the nature of an oath. The court exercised its wide discretion in reaching that determination. See *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus; *State v. Wildman* (1945), 145 Ohio St. 379, 31 O.O. 5, 61 N.E.2d 790, paragraph three of the syllabus.

At trial, four of the five victims testified and were subject to cross-examination. The prosecution presented no physical evidence of the charged crimes. Beside the adolescent victims, only the investigating officer, a former co-worker, and two psychologists testified in the state's case-in-chief. Cotton's defense at trial was based upon attacking the credibility of the complaining witnesses who brought charges in this case and contending that their allegations were false and unsubstantiated.

In his first assignment of error, Cotton contends that the trial court erred by permitting the introduction of prior acts of alleged sexual misconduct by Cotton in violation of Evid.R. 404(B) and of the rape-shield statutes, R.C. 2907.02(D) and (E), and 2907.05(D) and (E).[1]

Cotton claims that the trial court failed to conduct the in-chambers hearing mandated for review of the admissibility of allegations of past sexual activity of the defendant. Cotton claims that the court on at least three occasions admitted other-acts sexual evidence without establishing a proper basis for its admission,

---

1. R.C. 2907.02(D) and (E) are identical to R.C. 2907.05(D) and (E), except that the former applies to rape, while the latter applies to gross sexual imposition.

without evaluating whether the probative value of the evidence outweighed its prejudicial effect, and without giving limiting instructions to the jury on the permissible uses of this testimony. Cotton contends that other-acts evidence was impermissibly introduced through the testimony of state witnesses Sergeant Steven Dungan and Meg Brueggemeyer, and through the cross-examination of defense witness Officer Vance Spencer.

R.C. 2907.02 and its analogue, R.C. 2907.05, provide:

"(E) *Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers,* which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown." (Emphasis added.)

■ These statutes clearly dictate that a trial court shall resolve the admissibility of testimony involving prior sexual acts of the defendant in chambers. *State v. Acre* (1983), 6 Ohio St.3d 140, 6 OBR 197, 451 N.E.2d 802, paragraphs one and two of the syllabus. Moreover, a sidebar conference does not satisfy the requirements of an in-chambers hearing. *Id.* at paragraph three of the syllabus.

Here, the record does not reflect that any in-chambers hearing was ever held to determine the admissibility of the evidence regarding allegations of prior sexual misconduct by Cotton. When arguments as to admissibility were had, they were had at sidebar, with the jury seated in the courtroom.

During the other-acts testimony of Sergeant Dungan, the trial court overruled defense objections and refused to permit counsel to approach the bench for argument on the admission of other-acts testimony.[2] Where, over objection, the prosecution sought the introduction of testimony involving past instances or accusations of Cotton's sexual conduct, from Dungan, Brueggemeyer and Spencer, that did not relate directly to the five victims in this case, the trial court erred in not holding an in-chambers hearing.

Whether the trial court committed reversible error depends upon whether the failure to hold the hearing and the introduction of evidence of other sexual acts contributed to Cotton's conviction. If the evidence was otherwise admissible, but was admitted without an in-chambers hearing and was merely corroborative or cumulative to that which had been given by other witnesses, the failure to conduct the hearing may have been nonprejudicial. *State v. Acre*, 6 Ohio St.3d 140, 6 OBR 197, 451 N.E.2d 802, paragraph two of the syllabus.

---

2. The court also refused to permit defense counsel to approach the bench during the testimony of one of the victims on her knowledge of Cotton's prior acts towards others. Defense counsel objected on the basis of the rape-shield laws. The court refused to permit a sidebar conference, stating that "there is no need to."

■ The admissibility of other-acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crimes charged in the indictment. See *State v. Schaim* (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661, 668. The legislature has recognized the substantial danger in the admission of other-acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible. R.C. 2907.05(D) and 2907.02(D) both provide:

"Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

Unlike the test provided in Evid.R. 403, requiring that evidence must be excluded where its probative value is substantially outweighed by its prejudicial effect, R.C. 2907.02(D) and 2907.05(D) provide simply for weighing the probative value of the evidence against its prejudicial effect.

■ Where, as here, evidence of the defendant's sexual activity does not involve the origin of semen, pregnancy or disease, or the defendant's past sexual activity with the victim, the jury can hear such evidence only if it is admissible against the defendant under R.C. 2945.59, and only to the extent that its inflammatory nature does not outweigh its probative value. R.C. 2945.59 provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

■ Evid.R. 404(B) also provides that evidence of other acts is not admissible to prove that a person acted in conformity with his character on a particular occasion. See *State v. Broom* (1988), 40 Ohio St.3d 277, 281–282, 533 N.E.2d 682, 689–690. Other-acts evidence is never admissible when its only purpose is to

establish that the defendant committed the act alleged in the indictment. *State v. Flonnory* (1972), 31 Ohio St.2d 124, 60 O.O.2d 95, 285 N.E.2d 726, paragraph two of the syllabus.

The state contends that Cotton "opened the door" to this other-acts evidence by inquiring into other allegations against him. The state relies upon *State v. Banks* (1991), 71 Ohio App.3d 214, 593 N.E.2d 346, where the court held that the defendant "opened the door" to such other-acts evidence by taking the stand and repeatedly testifying that he would never have had sexual contact with a member of his family. Here, as in *State v. Clemons* (1994), 94 Ohio App.3d 701, 641 N.E.2d 778, where the court found error in the admission of prior sexual acts evidence, the defendant never took the stand. The other-acts evidence against Cotton was introduced through the state's witnesses and by the cross-examination of a defense witness.

On cross-examination the defense asked state's witness Sergeant Dungan, of the Ohio Highway Patrol, how many people he interviewed in his earlier investigation of Cotton. On redirect examination, the prosecution asked Dungan who among the former patients he interviewed had accused Cotton of sexual misconduct. The defense objected. When defense counsel asked to approach the bench, the trial court refused and directed the prosecution to continue questioning the witness. Dungan went on to recount accusations of sexual misconduct leveled by other patients not called as witnesses in this trial.

Meg Brueggemeyer, a registered nurse and a former Millcreek co-worker, properly testified about occasions where Cotton spent an unusual amount of unsupervised time with adolescent female patients. When, however, Brueggemeyer was asked by the prosecutor what she thought when she heard televised news reports that a Millcreek worker was under investigation, she answered that she knew it had to be Cotton. Again, the trial court overruled a defense objection. Brueggemeyer went on to recount for the jury a report she heard from a former Millcreek patient that Cotton was having sex with the patients at Millcreek. She learned of this after she left the employ of the Millcreek Center.

In Cotton's presentation of his defense, Millcreek Center police officer Spencer testified about charges of alleged victims. Spencer testified that he investigated the claims in 1993 and at that time determined that the allegations were unsubstantiated. On cross-examination, Spencer was instructed by the prosecutor to read his report regarding the incident. The report discussed prior allegations of sexual misconduct lodged against Cotton. The other allegations in the report were made by unnamed former patients at Millcreek. The trial court later refused to admit the report into evidence. Nonetheless, in closing argument the prosecutor told the jury:

"When you talk about credibility of these girls, you're going to need corroboration. You're not allowed to infer, well, he did it to * * *, therefore, he must have done it to * * *. You're not allowed to make that inference. But you can look at all those arguments for a pattern, and you need to look at how the defense witness told you about that pattern.

"Officer Van Spencer told you [how] he concluded [his investigation], unsubstantiated. He wrote up in the report in the paragraph immediately before closing the case unsubstantiated this is what he wrote in his report:

"Rick Cotton: This is the third allegation this year implicating Mr. Cotton with sexual activity. Altogether, there has been six similar allegations since 1987.

" * * *

"In conclusion, based on the available information, there is insufficient evidence to substantiate the present allegations.

"However, corrective action is under consideration due to past allegations implicating Rick Cotton with similar incidents of sexual activity."

The prosecutor continued that as the reports of other "incidents" were not made by the named victims in this case, "there are other girls out there, aren't there? Aren't there?"

The rape-shield laws were designed to prohibit evidence that is extremely inflammatory and prejudicial and only marginally probative. *State v. Gardner* (1979), 59 Ohio St.2d 14, 17, 13 O.O.3d 8, 9–10, 391 N.E.2d 337, 340. The testimony at issue does not fall under the exceptions specifically identified in R.C. 2907.02(D) or 2907.05(D), so its admissibility hinges on R.C. 2945.59.

In this case motive, intent, mistake, or accident is not at issue. For testimony regarding scheme, plan, or system to be admissible under R.C. 2945.59 it must be "inextricably related" to the crime and form the immediate background that serves as a foundation of the crime. *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 318, 18 O.O.3d 482, 488–489, 415 N.E.2d 261, 268. Where inflammatory prior-acts testimony does not serve these purposes, the conviction must be reversed unless there is no reasonable possibility that this testimony contributed to the accused's conviction. *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623, paragraph three of the syllabus, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

134

■ Here, the testimony, given over objection, especially by Brueggemeyer, does not tend to show scheme or opportunity.[3] In essence, Brueggemeyer made the forbidden inference that because Cotton may have been involved in misconduct with other patients, it had to have been Cotton who attacked the complaining witnesses. Her testimony is inadmissible under R.C. 2945.59, and in fact, it is precisely the type of testimony that Evid.R. 404(B) and the rape-shield statutes were designed to prevent. In light of the trial court's failure to exclude admission of this other-acts testimony, or to limit its impact by instruction, the jury was invited to follow the witness's example and to make the forbidden inference.

■ The testimony of Sergeant Dungan and the report of Officer Spencer detailed past allegations of sexual misconduct that did not serve the purposes of R.C. 2945.59. Evidence of prior accusations by people unrelated to the issues for resolution at trial only added to the ease with which the jury might make the forbidden inference. The admission of evidence of prior acts of sexual misconduct was, therefore, error.

■ Here, after examining the totality of the evidence adduced at trial, we are unable to say that the impermissible evidence, admitted without an in-chambers hearing, did not reasonably contribute to the jury's verdict. *State v. Lytle.* Unlike in *State v. Acre,* the evidence in this case did not overwhelmingly support conviction. Considering the absence of physical evidence, the number of years between the alleged acts and the trial, the effect of the cross-examination of the complaining witnesses, and the testimony of one Millcreek patient that she and a complaining witness plotted against Cotton in a search for attention, the evidence properly adduced cannot be considered overwhelming.

■ Because the rape-shield statutes apply only to the convictions of rape and gross sexual imposition, we must further determine whether the Brueggemeyer and Spencer prior-acts testimony permitted the jury to make the forbidden inference in regard to Cotton's conviction for felonious sexual penetration. Evid.R. 404(B). As stated previously, the Brueggemeyer testimony and the Spencer report led to the forbidden inference that the Evidence Rules prohibit. This too was error.

There is a real possibility that the victims' testimony may have been improperly bolstered by the other-acts evidence introduced from the testimony of medical and law enforcement personnel. The elicited testimony concerned specific instances of Cotton's prior alleged sexual activity which were highly inflammatory

3. Although opportunity is not one of the factors listed in R.C. 2945.59, it is listed in Evid.R. 404 and is probative of the sequence and framework of the crime.

and not logically or closely related to any proper purpose. In view of the inadmissible and prejudicial testimony admitted in Cotton's trial, his first assignment of error is well taken.

In his fifth assignment of error, Cotton contends that the trial court erred in overruling his motion for judgment of acquittal on two counts of gross sexual imposition, as the state failed to prove whether he purposely compelled two of the complaining witnesses to submit by force or threat of force. This assignment of error is not well taken. The evidence adduced at trial, including the direct testimony of the victims, is such that reasonable minds could reach different conclusions as to whether each material element of the crime charged had been proved beyond a reasonable doubt. Crim.R. 29; *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184.

The resolution of the remaining assignments of error is rendered moot by our resolution of the first and fifth assignments of error and by our ultimate disposition of this case. App.R. 12(A)(1)(c).

We hold that Cotton was so prejudiced by the impermissible admission of evidence of prior sexual conduct that we must reverse his convictions and remand this cause to the trial court for further proceedings consistent with law and this opinion.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., concurs.

PAINTER, J., concurs separately.

PAINTER, Judge, concurring separately.

I concur in the majority opinion, but write separately because the admission of the hearsay and "other acts" evidence in this case is a blatant if not intentional violation of the Rules of Evidence that should not be repeated, and because I believe that this court should address some of the other issues—if the case is to be retried, we should give some guidance, so the same mistakes are not made again.

In *State v. Roberts* (Mar. 6, 1996), Hamilton App. No. C–950277, unreported, 1996 WL 96897, we stated yet again that evidence of prior acts admitted to demonstrate that the defendant's character may be in conformity with those prior acts was inadmissible. This rule is basic, long-standing, and should be known by any first-year law student. However, it seems to be constantly disregarded by some prosecutors and judges in this county. See, also, *State v. Davis* (June 19,

1996), Hamilton App. No. C–950767, unreported, 1996 WL 341606 (Painter, J., concurring).

The objectionable evidence in this case is *not even evidence of prior acts,* but rather, it is evidence of *unfounded personal beliefs and prior unsubstantiated accusations.*

First, the trial court allowed a former co-worker to testify that when she heard a television report about the allegations, she immediately knew "it's Rick Cotton." She had absolutely no basis for this belief, just a gut feeling. She further testified that she *had been told* that Cotton had committed similar acts before. Again, she had no personal knowledge of any such prior acts. A highway patrol officer was allowed to testify that *other girls he talked with,* who were not even involved in the present case, *accused* Cotton. Counsel repeatedly objected to this evidence, and requested a bench conference. The trial judge denied both. Finally, an officer testified that Cotton was the subject of other *allegations that were found to be unsubstantiated.*

Unsubstantiated allegations may have been important to Fifteenth Century inquisitors in Spain, but such allegations have no probative value and cause extreme prejudicial harm in Twentieth Century criminal trials in the United States of America. We have the Rules of Evidence for a reason. Evid.R. 102 states that "[t]he purpose of these rules is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined." The prosecutor, aided and abetted by the trial judge, continually sought, and was permitted, to introduce blatantly inadmissible evidence, thereby tainting the truth-seeking process.

Another issue was the positioning of deputy sheriffs in the courtroom. Cotton was incarcerated, and made the point that having a deputy seated very near him, with others in the courtroom, was akin to having him in jail clothing—giving the jury the impression that not only was he incarcerated, but dangerous. See *Kennedy v. Cardwell* (C.A.6, 1973), 487 F.2d 101, 104. The trial judge stated that the positioning of deputies in the courtroom was beyond his control—and told counsel to call the sheriff if he had a problem! This is not only incorrect, but disingenuous. Trial courts have an affirmative duty to control *all* proceedings during the trial in order to prevent bias or prejudice against the accused or a denial to him of a fair trial. *State v. Farmer* (1951), 90 Ohio App. 49, 46 O.O. 391, 103 N.E.2d 289. See, also, R.C. 2945.03. Upon remand, this issue should be addressed by the trial judge.

Prosecutorial misconduct was rampant and egregious. On multiple occasions, the prosecutor solicited testimony of other accusations against Cotton, in a concerted effort to signal to the jury that Cotton has gotten away with this behavior before. This is basic misconduct, a blatant effort to obfuscate the

evidence with innuendo. *State v. Hunt* (1994), 97 Ohio App.3d 372, 646 N.E.2d 889. The reversal of this case is based on the ill-advised admission of this testimony.

Further, Cotton's attorney only learned *for the first time at trial* that Mrusek had multiple personality disorders, which had a direct bearing on her competency to testify. This failure was not a result of this attorney being asleep at the switch. The prosecutor knew of Mrusek's disorder well before trial, and therefore had an affirmative duty to tell Cotton's attorney, but failed to do so. See DR 7–103(B). Instead, the prosecutor sent a letter to the social worker for an alleged victim, Amy Mrusek, telling the social worker that she had the right to choose not to talk to Cotton's counsel, and wrote, "Obviously, we would suggest that you don't talk with anyone working for Ricky Cotton, but the choice is yours. You can simply tell his lawyer that you don't want to speak with him." Not surprisingly, the social worker and Mrusek refused to talk to Cotton's attorney, so the attorney could not learn independently that which the prosecutor had withheld from him.

The majority is correct to consider some of the assignments as moot, because the same problems should not occur on remand. The fiasco of the incorrect jury instructions will surely not recur, at least in the same way. However, before the retrial of this case, a thorough study of the Rules of Evidence by all concerned, and a study by the prosecutor of the Code of Professional Responsibility, especially DR 7–103(B), DR 7–106(C)(7), and EC 7–25, would seem to be in order.