DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Wood County Court of Common Pleas which, following a jury trial, found appellant, Lee Darrington, guilty of all counts in the indictment: Count 1, theft, occurring between *Page 2 
August 1, 2005 and May 2, 2006, in Wood County, Ohio,[1] in an amount of property or services in excess of $100,000, in violation of R.C. 2913.02(A)(3), a felony of the third degree; Count 2, forgery, occurring between December 30, 2005 and January 31, 2006, in violation of R.C. 2913.31(A)(2), a felony of the fifth degree; Count 3, trafficking in cocaine, in an amount equal to or greater than 10 grams but less than 100 grams, in violation of R.C. 2925.03(A)(1), a felony of the third degree; and Count 4, engaging in a pattern of corrupt activity, including theft, forgery, and trafficking in cocaine, occurring between August 1, 2005 and May 2, 2006, in violation of R.C.2923.32(A)(1), a felony of the first degree. Appellant was sentenced to three years incarceration as to Count 1, eleven months incarceration as to Count 2, three years incarceration as to Count 3, with a three year suspension of his driver's license, and eight years incarceration as to Count 4.
 {¶ 2} The incidents of corrupt activity alleged in Count 4 of the indictment included the following: (1) on or about December 29, 2005, appellant gave Benjamin Fouts a counterfeit check, in the amount of $589.03, for Angela Sanka, who was driven by Fouts to a Meijer store in Wood County, where Sanka cashed the counterfeit check; (2) on or about December 30, 2005, appellant gave Fouts counterfeit checks, in the amounts of $589.13 and $389.13, for Taylor Vollmar, who was driven by Fouts to locations in Wood County, including a Meijer store and Sunoco station, respectively, where Vollmar cashed the counterfeit checks; (3) on or about January 3, 2006, appellant *Page 3 
gave Fouts counterfeit checks, in the amounts of $489.73, $689.73, and $589.73, for Rachel Santogrossi, who was driven by Fouts to locations in Wood County, including a Sunoco station, Kroger store, and Meijer store, respectively, where Santogrossi cashed the counterfeit checks; (4) on or about January 4, 2006, appellant gave Fouts counterfeit checks, in the amounts of $593.18 and $493.18, for Santogrossi, who was driven by Fouts to locations in Wood County, including a Meijer store, where she cashed a counterfeit check, and a Sunoco station, where she attempted to cash a counterfeit check but was denied; (5) on or about January 6, 2006, appellant and Adaris Welch gave Tera Varanese a counterfeit check in the amount of $589.73, which was cashed at a Meijer store in Wood County; (6) on or about March 9, 2006, an individual known as "JR" gave Keith Barnes counterfeit checks, having the same characteristics as counterfeit checks made by appellant, in the amounts of $681.43 and an unknown amount, which were presented at a Sunoco station in Wood County for cashing; (7) on or about March 13, 2006, Jacqueline Haas cashed seven counterfeit checks, each having the same identifying characteristics as the counterfeit checks made by appellant, in the amounts of $3,463.12, $2,978.05, $2,983.46, $4,369.12, $3,894.61, $2,986.13, and $2984.18, at various Charter One Banks in Lucas County; (8) on or about March 24, 2006, Haas attempted to cash a counterfeit check, in the amount of $4,681.03, which had the same identifying characteristics as the counterfeit checks made by appellant, at a Fifth Third Bank in Wood County; (9) on or about April 17, 2006, Bobby Bannister gave Sarah Hoefflin a counterfeit check, having the same characteristics as counterfeit checks made by *Page 4 
appellant, in the amount of $1,897.61, which was presented at a Sky Bank in Wood County for cashing; (10) on or about August 1, 2005 and continuing through May 2, 2006, appellant generated funds by producing counterfeit checks, recruited multiple individuals to cash the counterfeit checks, and would give the "casher" of the check a portion of the proceeds and retain the balance, using his portion to pay Welch, Bannister and others, purchase more supplies to generate more counterfeit checks, and credit Fouts' account for past cocaine transactions.[2]
 {¶ 3} On appeal, appellant raises the following assignments of error:
 {¶ 4} 1. "The trial court erred to the prejudice of appellant by denying his motion in limine in general, and most particularly as it sought to exclude `prior acts' evidence pursuant to Rules 401, 403(a) (sic), 404(A), and 404(B) of the Ohio Rules of Evidence, and by overruling continuing objections to admission of said evidence."
 {¶ 5} 2. "Evidence of the state was insufficient to support a finding that the value of the property involved in Count One of the indictment was more than $100,000, consideration of said amount should not have been presented to the jury, and the jury erred in finding that value proved beyond a reasonable doubt."
 {¶ 6} 3. "The verdict of the jury, finding beyond a reasonable doubt that the value of the property involved in Count One of the indictment was $100,000 or more, was against the manifest weight of the evidence." *Page 5 
 {¶ 7} 4. "Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Constitution of the State of Ohio."
 {¶ 8} With respect to his first assignment of error, on February 23, 2007, appellant filed a motion in limine requesting the trial court to prohibit the state from presenting and/or making reference to certain evidence in the presence of the jury including appellant's prior criminal convictions, prior criminal investigations of appellant, incidents of corrupt activity or common course of conduct that did not involve appellant, and appellant's criminal record and prior incarceration. Appellant argued that evidence of his prior forgery conviction was not relevant to the charges in this case. See Evid.R. 401. Appellant also argued that, even if the evidence was probative, the value of such information would be substantially outweighed by the danger of unfair prejudice against appellant. See Evid.R. 403(A). Appellant further argued that Evid.R. 404(A) prohibits evidence regarding a person's character, or a trait of his character, and Evid.R. 404(B) prohibits evidence of other crimes, wrongs or acts, if any are used to prove that appellant acted in conformity therewith on a particular occasion. Appellant asserted that evidence of other crimes, wrongs or acts that occurred in Lucas County were not admissible in this case, pursuant to Evid.R. 404(B), to demonstrate motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, because the investigation in Lucas County regarding earlier forgery convictions would be extremely prejudicial. Appellant also sought to exclude reference to any of the alleged incidents of corrupt *Page 6 
activity, specified within Count 4 of the indictment, as they alleged minimal or no criminal conduct by appellant and, therefore, would be unfairly prejudicial.
 {¶ 9} The state responded to appellant's motion in limine, asserting that the evidence was admissible pursuant to Evid.R. 404(B), in that it would establish the modus operendi, or scheme, of the enterprise. Specifically, the state argued that, pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts may be admitted to show things such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. However, only if the probative value of the evidence outweighs the potential prejudice to appellant is the evidence admissible. Evid.R. 403. The state argues that the schemes of the alleged enterprise in this case, and the enterprise for which appellant entered a guilty plea to engaging in a pattern of corrupt activity in Lucas County, are inextricably related, as, in both cases, investigators learned of the identical schemes for obtaining routing and account numbers of businesses, recruiting individuals to cash counterfeit payroll checks, and that, soon after being released for his crime in Lucas County, checks with similar characteristics began to be cashed in Wood County. The state argued that the probative value of the evidence was not outweighed by the potential prejudice to appellant because the state is merely using the facts of the previous enterprise to show that the mode of operation of the enterprises in Lucas County and Wood County were so inextricably related that it led to a quick investigation on a complex case in Wood County. *Page 7 
 {¶ 10} Prior to trial, the trial court ruled on appellant's motion and held that the motion was denied to the extent that "the testimony deals with either the corrupt activity or complicity in the criminal enterprise to the specific act amounting to or comprising the enterprise," and to the extent that "any testimony goes to establish a common scheme, plan, motive, or identity pursuant to the rule." However, the trial court granted appellant's motion in limine to the extent that the court would craft a limiting instruction for the jury and would prohibit the parties and witnesses from referring to appellant as having been in "prison" for any prior offense. If reference to appellant's incarceration was necessary, the parties were instructed to refer to appellant as having been "in custody."
 {¶ 11} When instructing the jury, in regard to evidence of prior acts, the trial court stated the following:
 {¶ 12} "Evidence was received about the commission of other crimes, wrongs or acts other than the offenses with which the defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity with that character. If you find that the evidence of other crimes, wrongs or acts is true and that the defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves the absence of a mistake or the defendant's motive, opportunity, intent, preparation or plan to commit the offenses charged in this *Page 8 
trial or knowledge of circumstances surrounding the offense charged in this trial or the identity of the person who committed the offenses in this trial."
 {¶ 13} Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid.R. 404(B). However, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. For evidence regarding scheme, plan, or system to be admissible under Evid.R. 404(B), the evidence must be inextricably related to the crime and form an immediate background that serves as the foundation to the crime. State v. Cotton (1996), 113 Ohio App.3d 125,133. Also, when other acts demonstrate criminal conduct, they should be so blended or connected with the act on trial that proof of one incidentally involves the other, explains the circumstances thereof, or tends logically to prove an element of the crime charged. State v.Roe (1989), 41 Ohio St.3d 18, 23-24, citing State v. Wilkinson (1980),64 Ohio St.2d 308, 317. The exceptions allowing the evidence "must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." State v. Broom (1988),40 Ohio St.3d 277, paragraph one of the syllabus. Nevertheless, the admission of such evidence lies within the broad discretion of the trial court and should not be overturned absent an abuse of discretion that has created material prejudice. State v. Conway, 109 Ohio St.3d 412,2006-Ohio-2815, ¶ 62, citing, State v. Issa (2001), 93 Ohio St.3d 49,64. As such, our inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or *Page 9 
unconscionably in allowing the admission of the other crimes, wrongs, or acts, in this case. Conway, ¶ 62, citing, State v. Barnes (2002),94 Ohio St.3d 21, 23.
 {¶ 14} Upon review of the record, we find that the evidence of prior acts regarding the criminal investigation that took place in Lucas County is admissible, pursuant to Evid.R. 404(B), to establish appellant's involvement in the counterfeit check, fraud, and theft scheme in this case. There were close similarities between the prior acts and the present case, including, but not limited to, how the checks were made, what they looked like, what signatures appeared on the checks, how and where the checks were cashed, how people who cashed the checks were recruited, and that appellant provided the counterfeit checks to be cashed. By establishing the manner in which the Lucas County scheme operated, the state was able to explain the circumstances and elements of the crimes charged in Wood County. The other acts also enabled the state to identify appellant as the manufacturer and/or provider of the counterfeit checks that were passed in Wood County. Accordingly, we find that the evidence presented regarding the crimes in Lucas County was inextricably related to, and formed an immediate background and foundation for, the Wood County crimes.
 {¶ 15} We therefore find that the other acts evidence was relevant in this case as it had a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Nevertheless, appellant argues that the introduction of such evidence should have been prevented, pursuant to Evid.R. 403(A), because the probative *Page 10 
value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. We disagree. Any potential prejudice created by the references to the Lucas County investigation was eliminated by the trial court's limiting instruction to the jury regarding the usefulness and relevance of the evidence.
 {¶ 16} Accordingly, we find that the trial court did not abuse its discretion in permitting the introduction of other crimes, wrongs or acts in this case. Appellant's first assignment of error is therefore found not well-taken.
 {¶ 17} Appellant argues in his second and third assignments of error that the evidence presented was insufficient to establish the elements of theft in Count 1 of the indictment, and that his conviction was against the manifest weight of the evidence. Specifically, appellant argues that the evidence did not support a finding beyond a reasonable doubt that the value of the property he allegedly stole was more than $100,000, but less than $500,000.
 {¶ 18} Relying on the testimony of Detective James Gross; Christie Herder, senior fraud investigator at Sky Bank; Christine Gunther, security manager at Huntington Bank; Donald Laymond, fraud investigator for Charter One Bank; Sandra Beavers, fraud investigator for National City Bank; and Kelly Doran, the regional fraud investigator for Fifth Third Bank, the state argues that the evidence established that appellant was guilty of a felony of the third degree because the total value of the fraudulent checks cashed exceeded $100,000. *Page 11 
 {¶ 19} Crim.R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction of the offenses. As such, the issue to be determined with respect to a motion for acquittal is whether there was sufficient evidence to support the conviction. Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 20} "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. In making this determination, an appellate court must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 21} When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eskridge (1988), 38 Ohio St.3d 56, 59. The court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. The discretionary power to *Page 12 
grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. Id.
 {¶ 22} The burden is on the state to establish the elements of the crime beyond a reasonable doubt. In this case, in Count 1 in the indictment, appellant was charged with using a common course of conduct in Wood County between August 1, 2005 and May 2, 2006, "with purpose to deprive multiple victims of property or services, to wit: money, or knowingly obtain or exert control over said property or services by deception," the value of said property or services being more than $100,000. The dollar amount taken during the theft offense determines the degree of felony of which appellant could be convicted.[3] The jury was asked what amount of property, involved in Count 1 of the indictment, was proven beyond a reasonable doubt: less than $500; $500 or more but less than $5,000; $5,000 or more but less than $100,000; or $100,000 or more. All 12 members of the jury found that the state had proven that "$100,000 or more" was taken. *Page 13 
 {¶ 23} At trial, the state called James Gross, detective with Perrysburg Township Police Department, who testified that he began his investigation into appellant's counterfeit check activity on January 5, 2006, when his department was contacted regarding a check that was passed at a Sunoco station in Wood County by Rachel Santogrossi. Gross testified that he tied approximately 105 people into the check cashing scheme, with appellant being a key individual. When asked "how much money this organization gained," Gross testified that the primary banks involved provided him information that their "overall exposure was $165,568.42." When asked where the checks were cashed, Gross testified that "[a] lot of the checks were cashed in Lucas County," but there were also checks that were cashed in Wood County, at banks in Northwood, and in convenience stores in Perrysburg, Perrysburg Township, and Rossford. In particular, we note that Gross did not specify the time period of the alleged exposure, or what amount of loss, or exposure to loss, occurred in Wood County, as opposed to Lucas County, or any other jurisdiction.
 {¶ 24} Christie Herder testified that she "[h]as been familiar with appellant for at least five years" and that Sky Bank has "had several different cases" involving counterfeit checks that it attributed to appellant. She noted that "[t]here were certain similarities between the counterfeit checks that [Sky Bank has] gotten over the years [emphasis added]," making the checks easy to link together. When asked what was the total loss to Sky Bank "tied into Darrington checks," Herder testified that the exposure was over $100,000. She explained that the difference between loss and exposure was that *Page 14 
exposure was "anything that the bank could take a loss on," even though, if the checking account closes, the stores that cashed the checks end up bearing the actual loss. On cross-examination, Herder testified that "the incidents that [they were] talking about all occurred outside of Wood County." Again, although Sky Bank had been exposed to loss through appellant's checks "over the years," we note that the state did not have Herder establish that the $100,000 exposure to loss occurred during the time period specified in Count 1 of the indictment.
 {¶ 25} Christine Gunther testified that the Perrysburg Municipal Court's account with Huntington Bank had been compromised by counterfeit checks associated with appellant's enterprise. Gunther testified that Huntington Bank's potential loss totaled approximately $8,000. We, however, note that appellant was a suspect in a case with Huntington Bank in 2004, and that the only checks testified to by Gunther, with respect to this case, concerned Rachel Santogrossi and Tera Varanese, which totaled approximately $3,000. Thus, the state failed to establish whether the additional $5,000 of potential loss was suffered during the time period specified in the indictment.
 {¶ 26} Donald Laymond testified that Jacqueline Haas negotiated counterfeit checks, drawn on the account of Concord Care Centers, totaling $23,683.67, on or about March 13, 2006, in Lucas County, through her Charter One Bank account. Concord Care Centers are not located in Wood County. Sandra Beavers testified that, in connection with Concord Care Centers' compromised account, National City Bank suffered a total exposure to loss of $41,495.50, with an actual loss of $17,248.81, the difference in the *Page 15 
amount of loss was absorbed by the stores and/or other banks that cashed the checks. With the exception of the checks cashed by Haas, no testimony was given regarding when the checks were cashed and/or whether they were cashed within the time frame alleged in Count 1 of the indictment. Additionally, Beavers testified that, although she did not know where the Haas checks were cashed, she knew that the other checks were cashed in Lucas County.
 {¶ 27} Kelly Doran testified that she was familiar with appellant as being associated with counterfeit checks in the area. Doran investigated counterfeit checks, made out to Tera Varanese and Jacqueline Haas, that were tied to appellant. Although Doran testified that Fifth Third Bank suffered a "total loss" of $28,700 that was "tied in to Mr. Darrington," and had a potential exposure to loss totaling "[j]ust over $49,700," we note that the two checks payable to Varanese and Haas were never cashed. And, again, Doran did not testify that Fifth Third Bank's loss and/or potential exposure to loss occurred during the time frame set forth in Count 1 of the indictment.
 {¶ 28} Because appellant is innocent until proven guilty, he was not required to establish, through cross-examination or otherwise, when the alleged losses suffered by the banks and merchants occurred. Rather, the state bears the burden of establishing the elements of a crime beyond a reasonable doubt. As such, the state needed to establish that the theft offense occurred within the jurisdiction and within the time frame set forth in the indictment. As discussed above, we find that the state failed to establish that from *Page 16 
August 1, 2005 to May 2, 2006, in Wood County, appellant committed a theft offense with respect to property or services valued in excess of $100,000.
 {¶ 29} In fact, based on the testimony and evidence submitted, we can only determine that approximately $12,000 in checks were cashed in Wood County during the relevant time period. Besides the almost $12,000 in checks cashed in Wood County, we find that no witness testified that the allegedly counterfeit checks passed by appellant's enterprise were manufactured or cashed in Wood County; drawn on accounts established in Wood County; drawn under account numbers or names of businesses located in Wood County; or that the checks were even transported through Wood County. There is simply no support in the record that $165,568.42, or even $100,000, was obtained by any manner or method connected with Wood County during the time frame set forth in the indictment. Accordingly, based on a thorough review of the evidence presented at trial, we find that the state failed to prove each element of the crime of aggravated theft, a felony of the third degree, in violation of R.C. 2913.02(A)(3) and (B)(2). We also find that the jury lost its way in determining that appellant committed a theft offense with property or services valued in excess of $100,000. Appellant's second and third assignments of error are therefore found well-taken.
 {¶ 30} Appellant argues in his fourth assignment of error that he was denied the effective assistance of trial counsel, with respect to Count 1 of the indictment, due to counsel's failure to more vigorously cross-examine the state's witnesses regarding the time frame that the alleged losses were suffered. Based on our determination of *Page 17 
appellant's second and third assignments of error, we find appellant's fourth assignment of error is rendered moot and found not-well taken.
 {¶ 31} On consideration whereof, this court finds that substantial justice has not been done the party complaining with respect to his conviction on Count 1 of the indictment, aggravated theft, a felony of the third degree, as the state failed to prove each element of the offense charged. We therefore vacate and reverse the judgment of the Wood County Court of Common Pleas with respect to Count 1 only. Furthermore, having found no error with respect to the trial court's admission of evidence of other crimes, wrongs or acts, we affirm appellant's convictions on Counts 2, 3, and 4 of the indictment. This matter is remanded to the trial court for further proceedings in accordance with this decision. Appellant and appellee are each ordered to pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT REVERSED, IN PART, AND AFFIRMED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 18 
Peter M. Handwork, J., Arlene Singer, J. Thomas J. Osowik, J., CONCUR.
[1] All future references to "Wood County" or "Lucas County" refer to Wood County, Ohio, or Lucas County, Ohio, respectively.
[2] Two incidents of corrupt activity, originally numbered nine and ten, were dismissed from the indictment on February 2, 2007.
[3] R.C. 2913.02(B)(2) states that a violation of R.C. 2913.02 is petty theft, a misdemeanor of the first degree. However, "[i]f the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars," the violation is theft, a felony of the fifth degree; "[i]f the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars," the violation is grand theft, a felony of the fourth degree; "[i]f the value of the property or services stolen is one hundred thousand dollars or more and is less than five hundred thousand dollars," the violation is aggravated theft, a felony of the third degree; "[i]f the value of the property or services is five hundred thousand dollars or more and is less than one million dollars," the violation is aggravated theft, a felony of the second degree; and "[i]f the value of the property or services stolen is one million dollars or more," the violation is aggravated theft of one million dollars or more, a felony of the first degree. *Page 1