[Cite as *State v. Henry*, 2017-Ohio-2902.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                        Court of Appeals No. E-15-064

        Appellee                                    Trial Court No. 2013-CR-373

v.

James Henry                                         **DECISION AND JUDGMENT**

        Appellant                                   Decided:  May 19, 2017

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorneys, Aaron Lindsey
and Jonathan M. McGookey, Assistant Prosecuting Attorneys, for
appellee.

Brian J. Darling and Kristin M. Lease, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Appellant, James Henry, appeals from a judgment of conviction and

sentence entered by the Erie County Court of Common Pleas after a jury found him

guilty of two counts of gross sexual imposition, three counts of rape, and one count of

attempted rape.  He assigns the following errors for review:

I. THE TRIAL COURT'S SENTENCING OF APPELLANT JAMES HENRY VIOLATED HIS CONSTITUTIONAL RIGHTS UNDER BOTH THE U.S. CONSTITUTION, ARTICLE I, SECTION 9, CL. 3, AS WELL AS OHIO CONSTITUTION, ARTICLE II, SECTION 28. THIS COURT SHOULD REMAND THE CASE TO THE TRIAL COURT FOR RESENTENCING.

II. THE TRIAL COURT'S SENTENCING OF APPELLANT JAMES HENRY TO LIFE IMPRISONMENT WITHOUT PAROLE UNDER R.C. 297103(A), WHEN HE HAD NOT BEEN CONVICTED OF THE SPECIFICATION REQUIRED BY THAT DIVISION WAS CLEARLY AND CONVINCINGLY CONTRARY TO LAW, AND THIS COURT SHOULD REMAND THE CASE TO THE TRIAL COURT FOR RESENTENCING.

III. JAMES HENRY'S COURT APPOINTED COUNSEL'S REPRESENTATION FELL BELOW THE OBJECTIVE STANDARD OF REASONABLE REPRESENTATION, AND, BUT FOR COUNSEL'S ERRORS, THE TRIAL RESULT WOULD HAVE BEEN DIFFERENT.

{¶ 2} In September of 2011, the Erie County Grand Jury returned a six-count indictment against appellant, charging him with two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), three counts of rape in violation of R.C. 2907.02(A)(1)(b), and one count of attempted rape in violation of R.C. 2923.02(A).

2.

Counts 3 through 5 included a specification that "defendant purposely compelled the victim to submit by force or the threat of force during the commission of the offense." The six incidents alleged in the indictment involved one victim, T.H. (DOB 04/18/97), the minor daughter of appellant's live-in girlfriend. The case was tried to a jury in August of 2015. T.H. was 18 years old at the time of trial.

{¶ 3} At the close of the state's evidence, appellant moved for a judgment of acquittal. After the trial court denied the motion, appellant rested without presenting any evidence, and the case was submitted to the jury. The jury found appellant guilty on all six counts. Each count had a separate finding that the victim, at the time of the offense, was less than 13 years of age. The jury also entered a separate finding under Counts 3 through 5 that appellant "did compel the victim to submit by force or threat of force during commission of offense."

{¶ 4} The trial court sentenced appellant to five years in prison as to Count 1, and five years in prison as to Count 2. As to Counts 3, 4, and 5, the trial court imposed what it described as "mandatory life." As to Count 5, the court sentenced appellant to "mandatory 25 to life." Finally, the court imposed an eight-year prison sentence as to Count 6. The trial court ordered the sentences in Counts 1 through 5 to run concurrent with one another and consecutive to Count 6. Appellant was classified as a sexually oriented offender.

## First Assignment of Error

{¶ 5} In his first assignment of error, appellant argues that the trial court erred, as to Counts 3 (alleged to have occurred between September 2004 and June 2005) and 4 (alleged to have occurred between June 2005 and April 17, 2006) in sentencing him under a post-2006 version of R.C. 2907.02(B) rather than the version of the statute that was in effect at the time he committed the offenses for which he was convicted. Appellant contends that the penalty imposed for a violation of the statute changed from "life with the possibility of parole after ten years" to "mandatory life imprisonment."

{¶ 6} In response, the state argues that at the time appellant committed the offenses of rape in violation of R.C. 2907.02(A)(1)(b), R.C. 2907.02(B) allowed for "life without parole," but that the trial court did not impose it. The state then points to evidence *outside* the record—an offense information sheet from the Ohio Department of Rehabilitation and Correction—in support of its position that the department "has computed appellant's release date inclusive of the ten year parole eligibility."

{¶ 7} Preliminarily, we note that neither the state nor this court can rely on evidence outside the record to interpret the sentence imposed by the trial court. The record speaks for itself.

{¶ 8} The version of R.C. 2907.02(B) effective June 13, 2002 through January 2, 2007, provides, in relevant part, as follows:

Whoever violates this section is guilty of rape, a felony of the first degree. * * * If the offender under division (A)(1)(b) of this section

4.

purposely compels the victim to submit by force or threat of force or if the victim under division (A)(1)(b) of this section is less than ten years of age, whoever violated division (A)(1)(b) of this section shall be imprisoned for life. If the offender under division (A)(1)(b) of this section * * * during or immediately after the commission of the offense caused serious physical harm to the victim, whoever violates division (A)(1)(b) of this section shall be imprisoned for life or life without parole.

{¶ 9} In turn, R.C. 2967.13(A)(5) provides that if a sentence of imprisonment for life was imposed for rape, for an offense committed on or after July 1, 1996, the prisoner becomes eligible for parole "after serving a term of ten full years' imprisonment."

{¶ 10} In its September 29, 2015 judgment entry, the trial court states, as to Counts 3 and 4, that "Defendant is Sentenced to the Ohio Department of Rehabilitation and Correction to be imprisoned and confined for a definite sentence of LIFE of which LIFE is Mandatory." There is nothing on the face of the sentencing entry that would suggest appellant was sentenced to "life without parole." Thus, we must presume that, as to Counts 3 and 4, appellant is eligible for parole as set forth in R.C. 2967.13(A)(5).

{¶ 11} We find no merit in appellant's first assignment of error and it is found not well-taken.

## Second Assignment of Error

{¶ 12} In his second assignment of error, appellant argues that the trial court erred in sentencing appellant to an enhanced penalty under R.C. 2907.02(B), without the jury

5.

making the additional finding that the victim was under the age of 10 at the time of the crime.

{¶ 13} In response, the state asserts that the "record and verdict forms filed on August 25, 2015, demonstrate that the jury found appellant guilty of rape, a special finding that the victim in the Rape offenses was less than ten years of age and that appellant committed the offense with force."

{¶ 14} We note that the state is mistaken in its assertion that the jury issued a special finding that the victim was *less than ten years of age* at the time of the crime. While the jury verdict forms for Counts 3 and 4 include two additional findings, the first finding, as to both counts states: "We, the jury, find that [T.H.] was was [sic] less than thirteen (13) years of age at the time of the offense."

{¶ 15} Nonetheless, we find no merit to appellant's argument. As cited above, the version of R.C. 2907.02(B) effective June 13, 2002 through January 2, 2007, provides, in relevant part:

> Whoever violates this section is guilty of rape, a felony of the first degree. * * * If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force *or* if the victim under division (A)(1)(b) of this section is less than ten years of age, whoever violated division (A)(1)(b) of this section shall be imprisoned for life. (Emphasis added).

6.

{¶ 16} Here, the jury issued a second "ADDITIONAL FINDING" as to Counts 3 and 4. The finding states, "We, the jury, find that Defendant did purposely compel [T.H.] to submit by force or threat of force." Because the jury found one of the alternative additional findings, the trial court did not err in sentencing appellant to concurrent life terms as to Counts 3 and 4. Appellant's second assignment of error is not well-taken.

**Third Assignment of Error**

{¶ 17} In his third assignment of error, appellant argues that he was denied effective assistance of counsel. In order to prevail on this ground, appellant must establish: (1) trial counsel's performance was deficient; and (2) the deficient performance prejudiced the appellant. *State v. Kole*, 92 Ohio St.3d 303, 306, 750 N.E.2d 148 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 694. A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." *Id*.

{¶ 18} In his first argument under his third assignment of error, appellant asserts that defense counsel's performance fell below the objective standard of reasonable care when she (1) failed to respond to the state's January 21, 2014 motion in limine; and (2) failed to schedule a hearing concerning evidence of a sexual assault the victim allegedly suffered at the age of three by another suspect.

7.

{¶ 19} In its January 21, 2014 motion in limine, the state cited Ohio's rape-shield statute, R.C. 2907.02(D), and requested an order "prohibiting the admissibility of evidence of specific instances of the victim's sexual activity or opinion evidence of the victim's sexual activity." Trial counsel did not file a response in opposition. In granting the state's motion to suppress "evidence of the victim's sexual activity," the trial court specifically indicated, that "if Defendant has any potential evidence of this nature he wishes to introduce at Trial this Court will set conduct [sic] a hearing on its admissibility."

{¶ 20} Appellate now argues that trial counsel's failure to object to the motion was ineffective assistance of counsel. We disagree. In its motion in limine, the state argued, "[i]f defendant, in the case at bar, produces evidence which is admissible, then the State, in the alternative, respectfully requests that the Court schedule a hearing on this matter as mandated by [R.C.] 2907.05(E)." Here, the evidence sought to be excluded by the state at trial was produced by the state in discovery and was not specifically mentioned in its own motion in limine. Upon review of the motion, we see no details regarding evidence the state sought to prohibit. Rather, the state generally asserts that the rape shield law "reflects the public policy aimed at preventing sexual assault victims from being cross-examined about their past sexual conduct either as part of a general credibility attack or to raise an inference that the victim is somehow partly culpable because she may have consented with others in the past." At the time, trial counsel was likely aware that T.H. was sexually active at a young age and became pregnant when she was 15 years old. The

8.

state makes no reference to an allegation that another suspect had sexually assaulted T.H. when she was three years old.

{¶ 21} At trial, when defense counsel was about to question the victim of the alleged sexual assault by another suspect, the state objected, citing the trial court's ruling on the motion in limine and the hearing requirement set forth under R.C. 2907.02(E). At side bar, defense counsel asserts that she did not believe the motion in limine applied to the alleged sexual assault by another suspect. She explained,

> Just for the record, Judge, * * * one, this was disclosed. It was discovered – it was stuff received in discovery, all right? * * * I don't know exactly what the definition is or what's conceived with regards to sexual activity, but I don't see a criminal offense against her as sexual activity that's -- that's protected by this. I see the sexual activity as the fact and the intent is to – to shield her from anything that she's voluntarily getting into and * * * to not show * * * that she's promiscuous * * * you know, to not put her in a bad light, all right? * * * I don't believe that it's talking about something, you know what, that she, one, voluntarily disclosed or they knew about, and, two, it was something that was forced upon her. I don't see that – I don't see that as that type of sexual activity that the statute is trying to protect in this situation.

{¶ 22} The record reflects the trial court's frustration that it was not apprised, prior to trial, of the nature of evidence the state sought to exclude. After researching the topic

9.

over recess, the trial court concluded that the rape shield statute was intended to bar a sexual assault victim's *volitional* sexual activity. The evidence sought to be introduced at trial involved an allegation that the victim was assaulted by another suspect when she was three years old (two years before she met the appellant). In the end, the trial court excluded the evidence as irrelevant.

{¶ 23} Under the circumstances of this case, it was not unreasonable for defense counsel to conclude that the motion in limine did not exclude the evidence she sought to introduce. Nor was it unreasonable for her to fail to request a hearing under R.C. 2907.05(E) since the state produced the evidence during discovery and failed to specifically mention it in its motion in limine. Thus, we find no merit in appellant's first argument under his third assignment of error.

{¶ 24} In his second argument under his third assignment of error, appellant condemns trial counsel for her failure to respond to the state's motion to exclude her expert's report and alleges that "the trial court only found in favor of the State due to defense counsel's failure to respond." He further asserts that "defense counsel had a probability of success because the trial court granted the State's expert exclusion motion because it had no other option."

{¶ 25} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689.

10.

Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

{¶ 26} Trial counsel hired Jolie S. Brams, Ph.D., as a "consulting defense psychologist." After reviewing discovery provided to her, Dr. Brams prepared a report relating to her consultation in the case. The report included a "summary of potential testimony." In section 2 of her summary, Dr. Brams states two points to support her opinion that "clear questioning and the consideration of alternative hypotheses" was needed:

> One, this is a family in which, by the complainant's report, sexual abuse is a common occurrence; she reports that all her sisters have been "raped" and other family members have been the victim of sexual abuse. * * * Two, and of great importance, the alleged victim reports that she was hospitalized prior to her disclosure to her mother, presenting with very serious mental health and substance abuse concerns.

{¶ 27} Upon receipt of Dr. Brams' report, the state filed a motion to exclude both the report and expert testimony from the witness. The state argued that in the second point under section 2 of her report, Dr. Brams references and relies upon information that did not pertain to T.H., the victim in this case, but an alleged second victim, in a case in which appellant was not charged but whose case information was provided in discovery. Trial counsel did not file a response.

11.

{¶ 28} On appeal, appellant asserts that trial counsel's failure to respond to the motion fell below the objective standard of reasonable care and prejudiced the appellant. However, appellant cannot show that trial counsel's decision was strategically unreasonable. There is no evidence that Dr. Brams' report was factually correct. Thus, trial counsel might have determined that even if she could have persuaded the court to allow Dr. Brams to testify, the testimony would not have withstood scrutiny on cross-examination. Therefore, appellant fails to show that his trial counsel's performance was deficient and not sound trial strategy. Appellant's second argument under his third assignment of error is not well-taken.

{¶ 29} In his third argument under his third assignment of error, appellant asserts that his trial counsel was ineffective in failing to object to T.H.'s competency at trial. In support of his argument, appellant states, "T.H. testified that she suffers from depression, anxiety, and drug and alcohol abuse, hears voices and other auditory hallucinations, and has self-harmed in the past. Most importantly, T.H. admitted while testifying that she considered herself schizophrenic." Appellant then cites Merriam Webster's Online Dictionary definition of schizophrenia.

{¶ 30} At trial T.H., then 18 years of age, testified as follows:

Q. All right. We talked yesterday, and you had said that you had –
that you talked to Ms. Boger and that you had said that you weren't sure,
but you thought that you could be schizophrenic. Do you remember that?

A. Yes.

Q. Okay. Where do – if you can recall, how old were you when you talked to Ms. Boger?

A. Sixteen.

Q. Sixteen, okay. And where did you get the word schizophrenia from?

A. Um, medical books, the TV.

* * *

Q. All right. You said medical books. Did you actually go to a library or did you just find something online?

A. Um, I did a lot of research on the Internet and there was one book that I actually looked in at the library and it had a list of mental illnesses and what happens to people who have these illnesses.

Q. Okay. And what made you even to this research to begin with?

A. Because I wanted to know why I heard voices screaming at me.

Q. All right. And so – and you're doing this research during the period of time that we talked about that you're hearing voices from yesterday, right?

A. Yes.

{¶ 31} Despite T.H. believing at one time that she "could be schizophrenic," there is no evidence that T.H. was ever diagnosed with schizophrenia. And, even if there were, one cannot assume that such diagnoses would have rendered her incompetent to testify.

*See State v. Cotton*, 113 Ohio App.3d 125, 128, 680 N.E.2d 657 (1st Dist.1996) ("[P]ersons suffering from emotional or psychological illness are not automatically rendered incompetent to testify.").

{¶ 32} Evid.R. 601(A) provides that every person is competent to be a witness except, "Those of unsound mind * * * who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." *Id.* In *State v. Wildman*, 145 Ohio St. 379, 61 N.E.2d 790, the Supreme Court of Ohio explained:

> A person who is able to correctly state matters which have come within his perception, with respect to the issues involved, and appreciates and understands that nature and obligation of an oath is a competent witness, notwithstanding some unsoundness of mind. *Id.* at 386.

"The trial judge is in the best position to view and hear a witness and to determine the witness's understanding of the events in question and her understanding of the nature of an oath." *Cotton* at 129.

{¶ 33} Here, there is no indication on the record that T.H. was unable to correctly state matters which came within her perception regarding the issues involved in this case. Nor is there any indication that T.H. did not appreciate and understand the nature and obligation of her oath. The fact that T.H. believed, two years prior to trial, that she may have suffered from mental illness is not sufficient evidence that she was incompetent to testify at trial. Under these circumstances, we find no merit in appellant's argument that

14.

trial counsel's performance was deficient or that the performance prejudiced the appellant. The third argument under appellant's third assignment of error is not well-taken.

{¶ 34} In his fourth argument under his third assignment of error, appellant argues that trial counsel was ineffective for failing to object to her client being "retroactively sentenced." The merits of the alleged retroactive sentencing argument are addressed in our discussion of appellant's first assignment of error. Because we found no evidence of retroactive sentencing, the fourth argument under appellant's third assignment of error is not well-taken.

{¶ 35} In his fifth argument under his third assignment of error, appellant argues that trial counsel provided him ineffective assistance of counsel to an extent that violated his Sixth Amendment Right to Counsel and that under the cumulative error doctrine he should be granted a new trial. As explained in detail above, we find no merit in any of the arguments set forth by appellant. Thus, the fifth argument under appellant's third assignment of error is not well-taken. Appellant's third assignment of error is found not well-taken.

## Conclusion

{¶ 36} For the reasons set forth above, the judgment of the trial court is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

15.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.              _____
                           JUDGE

Arlene Singer, J.

    _____
James D. Jensen, P.J.                           JUDGE
CONCUR.

    _____
                           JUDGE