DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Donald C. Kuhn, Jr. has appealed from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 {¶ 2} On December 29, 2004, Defendant-Appellant Donald C. Kuhn, Jr. was indicted for one count of possession of cocaine, in violation of R.C. 2925.11; one count of endangering children, in violation of R.C. 2919.22(A); and one count of possession of drug abuse paraphernalia, in violation of R.C. 2925.14(C)(1). Appellant pled not guilty to the charges in the indictment. Appellant agreed to consolidate his case with that of his similarly charged wife and he waived his rights under Bruton v.United States (1968), 391 U.S. 123, 88 S.Ct. 1620,20 L.Ed.2d 476.
 {¶ 3} A bench trial was held on September 21, 2005. After the State rested its case, Appellant made a Crim.R. 29 motion and the court dismissed the child endangering charge, but the drug charges remained. The following day the trial court found Appellant guilty of possession of cocaine and possession of drug abuse paraphernalia.
 {¶ 4} Appellant has appealed his convictions, asserting two assignments of error.
 II Assignment of Error Number One
"APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION 10 OF THE OHIO STATE CONSTITUTION."
 {¶ 5} In his first assignment of error, Appellant has argued that he was denied the effective assistance of counsel. Specifically, he has argued that his counsel was ineffective because he agreed to waive Appellant's rights under Bruton and because he failed to file a motion to suppress evidence and Appellant's statements. We disagree.
 {¶ 6} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court articulated the test to determine if a defendant's constitutional right to the effective assistance of counsel has been violated. The Strickland test employs a two-step analysis. First, the defendant must show that counsel's performance was deficient, which requires a showing that counsel made errors so serious that counsel was not functioning as defendant's "counsel" guaranteed by the Sixth Amendment. Strickland, 468 U.S. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense, essentially depriving defendant of a fair trial with a reliable result. Id.
Appellant'sBruton Rights
 {¶ 7} Appellant has argued that he was denied the effective assistance of counsel because his Bruton rights were not protected. In Bruton, the United States Supreme Court found that a co-defendant's statement implicating a defendant cannot be used in a joint trial unless the co-defendant is available for cross-examination. Bruton, 391 U.S. at 127-128. Appellant has argued that since his wife did not testify, she was unavailable for cross-examination and her statements should not have been allowed into evidence. Appellant recognizes his rights underBruton were waived, but he claims said waiver was error.
 {¶ 8} The record shows that at the beginning of the bench trial on September 21, 2005, the trial court noted for the record that "there is an entry executed in [Appellant's and his co-defendant's] cases, dated in both cases on May 27th, 2005, in which both the defendants waive any rights they have associated with the so-called Bruton Rule and agree to consolidate these cases for purposes of trial." The trial court then asked if there were any changes in regards to that waiver and all parties answered no. The State then raised the issue again to the trial court stating:
"We have a Bruton problem pursuant to May 27th, 2005 entry, which the case agreed to be consolidated by all parties. Mr. and Mrs. Kuhn were advised of their Constitutional Rights, agreed to waive those rights associated with regard to any Bruton statements. It is my understanding [counsel for Appellant and his wife] advised both their clients what a Bruton problem is. We do have the statement made by Melinda Kuhn implicating Mr. Kuhn in the possession of the materials. Likewise, a statement from Mr. Kuhn which implicates Melinda Kuhn in regards to possession of the items. I just want to get that on the record they do waive their Bruton problem."
The trial court then asked the parties for a second time if they waived any Bruton issues and they answered yes. The trial court then specifically asked the attorneys, in the presence of the clients if they explained the implication of Bruton to the clients and if the clients were willing to go forward and both answered yes.
 {¶ 9} We do not find error in Appellant waiving his rights under Bruton. Based on the totality of the circumstances we find that Appellant waived his rights and said waiver was knowingly, voluntarily, and intelligently made. The record clearly shows that Appellant waived his rights under Bruton on the record at least four times. Appellant first waived hisBruton rights in May 2005 and then he repeatedly waived them at trial. The trial court began the trial by ensuring that Appellant still wished to proceed with the waiver in place. Appellant's counsel informed the court that the waiver remained and Appellant did not state anything to the contrary. The State then addressed the court and the defendants about the Bruton waiver and specifically stated that Appellant was advised of his rights under the law and that he waived them. The State also specifically informed the court and the parties of what statements would be admitted under the waiver and again stated that Appellant waived his rights. The State then asked the trial court to inquire again regarding the wavier and the trial court did so, with Appellant's counsel again stating the rights were waived and Appellant not saying anything to the contrary. The trial court then specifically asked if the attorneys explained the rights and if Appellant still wanted to waive; again counsel said yes and Appellant did not disagree.
 {¶ 10} This Court cannot imagine a clearer case of a voluntary, intelligent, and knowing wavier of a right. The trial court repeatedly asked if the rights were waived and it never received any indication that Appellant did not wish to waive his rights or that he did not understand them. The State even informed the parties what statements were going to be admitted and gave the Appellant a chance to challenge his waiver. After waiving his rights repeatedly on the record below, Appellant cannot successfully challenge them based on ineffective assistance of counsel. He has failed to establish that his counsel was not functioning as defendant's "counsel" guaranteed by the Sixth Amendment when he waived his Bruton rights. The record shows Appellant was advised of his rights, knew what statements were going to be admitted, and then waived said rights. Based on the foregoing, we find no error in Appellant's waiver of his Bruton rights.
Counsel's Failure to File Motions to Suppress
 {¶ 11} Appellant has argued that his counsel was ineffective because he failed to file motions to suppress the drug evidence and his statements to the police. To prevail on an ineffective assistance of counsel claim regarding an omission by counsel, a convicted defendant must show that the omission was not "the result of reasonable professional judgment" and was "outside the wide range of professionally competent assistance." Strickland,466 U.S. at 690. The failure to file a motion to suppress is not per se ineffective assistance of counsel. State v. Madrigal
(2000), 87 Ohio St.3d 378, 389, certiorari denied (2000),531 U.S. 838, 121 S.Ct. 99, 148 L.Ed.2d 58, quoting Kimmelman v.Morrison (1986), 477 U.S. 365, 384, 106 S.Ct. 2574,91 L.Ed.2d 305. Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted. State v. Robinson (1996),108 Ohio App.3d 428, 433; see, also, State v. Blagajevic (1985),21 Ohio App.3d 297, 299-300.
 {¶ 12} After a thorough review of the record, we find that Appellant has not established ineffective assistance of counsel for failure to file motions to suppress. Specifically, the record shows the evidence was legally obtained; therefore, Appellant would not have been successful in filing the motions to suppress.
 {¶ 13} With regards to the search of Appellant's basement, the trial court testimony shows that Appellant and his wife were advised that the police were called to conduct a child welfare check and to investigate the possibility of drugs in the house. Upon hearing the reason for the police presence, Appellant and his wife each gave consent to search their home. The record shows that when Appellant and his wife were told the basement would be searched and that their daughter had produced drug paraphernalia from the basement, they informed the officers they could not search the basement. However, trial testimony also shows that Appellant's wife later retracted her consent limitation and gave Officer Palmer consent to search the basement. While Appellant's wife had authority to give consent because the basement was part of the house she and Appellant shared, recent United Supreme Court case law established a new standard for determining the validity of consent by a co-occupant. In Georgia v. Randolph
(2006), ___ U.S. ___, 126 S.Ct. 1515, 164 L.Ed.2d 208, the United States Supreme Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by a another resident." Id. at 1526. Given that Appellant could be considered "physically present" and objecting to the search when his wife changed her mind and gave consent to search, it is arguable that his rights were violated by the subsequent warrantless search and seizure of evidence from the basement. However, assuming arguendo, that Appellant's counsel had been able to establish aFourth Amendment violation, we find that the evidence would have been admissible under the inevitable discovery doctrine and therefore Appellant would not have been successful in a motion to suppress the evidence seized from the basement.
 {¶ 14} Under the inevitable discovery doctrine, evidence seized in violation of an individual's Fourth Amendment rights is admissible "if it can be shown that such evidence would ultimately and inevitably have been discovered lawfully." (Citation omitted). State v. Mitchell (Nov. 15, 1995), 9th Dist. No. 17029, at 13. As previously discussed, before going into the basement, the police had probable cause to believe evidence of illegal activity existed in the basement. Specifically, the police received a call of possible drug activity at the house, Appellant's daughter informed the officers that evidence of such drug activity was in the basement and she produced some evidence to that effect, and Appellant and his wife both retracted consent to search the house when they were informed the officers would be searching the basement. Based on the foregoing information, a search warrant for the basement could have been obtained and the police would have found the drug paraphernalia and drug evidence from the basement admitted in Appellant's trial below. In other words, the evidence discovered in the basement by the police would have been discovered irrespective of the police entering the basement without Appellant's consent. Accordingly, we find that Appellant's counsel was not ineffective for failing to file a motion to suppress because such a motion would have failed.
 {¶ 15} We also find that Appellant would not have been successful in a motion to suppress his statements to the police. It is well recognized that a person can waive his Miranda
rights and that such waiver must be proven "by a preponderance of the evidence, [showing] that [appellant] knowingly, voluntarily, and intelligently waived those rights based on the totality of the circumstances." State v. Farris, 9th Dist. No. 03CA0022,2004-Ohio-826, at ¶ 13, citing State v. Gumm (1995),73 Ohio St.3d 413, 429. We have found that an express or written statement of waiver is not required to find a valid waiver ofMiranda rights. Farris at ¶ 13, citing North Carolina v.Butler (1979), 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286. Moreover, a waiver can be inferred from a defendant's words and actions. Id.
 {¶ 16} In the case sub judice, Appellant was in the back of the police cruiser when Sgt. Wolford approached him with the evidence from the basement. Sgt. Wolford testified on cross-examination that he advised Appellant of his Miranda
rights when he confronted him with the incriminating evidence from the basement. After Sgt. Wolford told Appellant that his wife said the items were his, Appellant responded that the "needles and the spoon had belonged to him, but the crack pipes, the tubes, belonged to his wife." While Sgt. Wolford failed to obtain a written waiver from Appellant, we find that Appellant's response after receiving his Miranda rights constituted waiver of said rights. The record is void of any evidence that Appellant wished to exercise his Miranda rights. Rather, the evidence showed that Appellant had been cooperative with the police before he was placed in the cruiser and he continued to attempt to resolve the situation after he was advised of his rights. Further, there is nothing to indicate that Sgt. Wolford coerced Appellant in any way into making any statements.
 {¶ 17} Based on the totality of the circumstances, we find that Appellant's statements were voluntary and that he knowingly, voluntarily, and intelligently waived his Miranda rights. Accordingly, Appellant would not have been successful in filing a motion to suppress his statements.
 {¶ 18} Given our finding that Appellant would not have been successful on a motion to suppress the evidence from the basement or on a motion to suppress his statements, we find that Appellant has failed his burden on establishing a claim of ineffective assistance of counsel on those issues. See Robinson, supra.
Conclusion
 {¶ 19} We find that Appellant has failed to show his counsel's performance was deficient; therefore, he has not proven his ineffective assistance of counsel claim. Accordingly, Appellant's first assignment of error lacks merit.
 Assignment of Error Number Two
"THE VERDICT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 20} In his second assignment of error, Appellant has argued that his convictions were against the manifest weight of the evidence and based on insufficient evidence. Specifically, Appellant has argued that the State's case was based on unreliable circumstantial evidence and therefore, the State did not prove all of the necessary elements of the crimes charged. We disagree.
 {¶ 21} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
 {¶ 22} In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (emphasis omitted).
 {¶ 23} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 24} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. Thompkins,78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court.Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 25} Appellant was convicted of possession of cocaine in violation of R.C. 2925.11(A). Pursuant to R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance." Appellant was also convicted of violating R.C.2925.14(C)(1), which states: "No person shall knowingly use, or possess with purpose to use, drug paraphernalia." R.C. 2901.22(B) defines "knowingly" as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 26} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C.2925.01(K). R.C. 2901.21(D)(1) sets forth the requirements for criminal liability and provides: "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 27} "Possession may be actual or constructive." State v.Kobi (1997), 122 Ohio App.3d 160, 174. Constructive possession has been defined as "knowingly exercis[ing] dominion and control over [the drugs and manufacturing items], even though [they] may not be within his immediate physical possession." State v.Hankerson (1982), 70 Ohio St.2d 87, syllabus. See, also, Statev. Wolery (1976), 46 Ohio St.2d 316, 329. Furthermore, ownership need not be proven to establish constructive possession. Statev. Mann (1993), 93 Ohio App.3d 301, 308. Circumstantial evidence is sufficient to support the element of constructive possession. See State v. Jenks (1991), 61 Ohio St.3d 259, 272-73.
 {¶ 28} During the trial, the State presented testimony from two members of the Lorain Police Department ("LPD") and admitted a Bureau of Criminal Identification and Investigation Report, a chore boy, syringes, a charred chore boy, a metal and glass pipe, a spoon, and baggies.
 {¶ 29} Sergeant James Wolford of the LPD testified to the following. In October 2004, Officer Palmer, also of the LPD, requested his assistance at Appellant's residence. Officer Palmer had been dispatched to the house to check on the welfare of a child and to investigate possible drug abuse in the home. When Sgt. Wolford arrived at the house, Officer Palmer showed him a crack pipe, spoons, and other drug related items that were retrieved from the house. Appellant and his wife both denied any drugs being in the house or that either one used drugs. Sgt. Wolford testified that Appellant's wife, and co-defendant, gave complete consent to search the house. Sgt. Wolford testified that after he obtained consent, he searched the house. During the search, the couples' daughter pointed out an area in the basement she believed her parents were doing drugs. Sgt. Wolford testified that when they started to search the basement, the couple tried to limit the consent they had already given.
 {¶ 30} Sgt. Wolford identified the items found and explained that a chore boy is cooper mesh wire that is used to block up the end of a crack pipe. Sgt. Wolford testified that the charring on the chore boy shows that it was used to smoke crack because the lighter burns the mesh. He identified used syringes from inside Appellant's basement and testified that such needles are used to inject heroin or cocaine directly into a vein. Sgt. Wolford identified two more crack pipes and a spoon that were found in Appellant's house and given to the police by Appellant's daughter. He identified plastic baggies, cellophane used to hold drugs and "other paraphernalia" and testified that such items are used to hold illegal drugs. He conducted field tests on the baggies, the spoon, the crack pipes, and one of the chore boys recovered from Appellant's house and each resulted in a presumptive positive test for cocaine.
 {¶ 31} Sgt. Wolford testified Appellant had been arrested on an unrelated matter and was placed in the back of a cruiser. After the evidence was collected Appellant told Sgt. Wolford that the "needles and the spoon had belonged to him, but the crack pipes, the tubes, belonged to his wife."
 {¶ 32} Sgt. Wolford testified to the following on cross-examination. When he spoke with Appellant he was already in handcuffs. Sgt. Wolford testified that as part of his interrogation technique he told Appellant that his wife had told them the items were his. Sgt. Wolford testified the he read Appellant his rights when he confronted him with the evidence, but he did not get a written waiver.
 {¶ 33} Sgt. Wolford testified on re-direct examination that Appellant's wife said the drugs belonged to Appellant.
 {¶ 34} Officer Palmer of the LPD testified to the following for the State. He responded to Appellant's residence on October 14, 2004 after receiving a call to check the welfare of a child. Officer Palmer testified that he first spoke with the daughter and then with Appellant and his wife. Officer Palmer told Appellant and his wife that he heard of possible drug use in the house and Appellant responded by telling Officer Palmer to check the house. Officer Palmer testified that Appellant told him "he didn't use any drugs other than they drank beer, and the only drugs he used was what was prescribed by his physician because he has a heart condition." Officer Palmer then obtained permission to search the house for drugs.
 {¶ 35} Officer Palmer continued testifying to the following. He received permission from daughter's mother to speak to daughter alone and after one conversation, daughter went back into the house and came back out with a crack pipe and the spoon. Daughter was upset and crying, overall in an "excited state" and she told Officer Palmer that she was sorry, but she couldn't take it anymore and then she slammed the items on the coffee table. The spoon was burnt with a white residue in the scooped portion of the spoon. Officer Palmer testified that such items are used to consume drugs. After Sgt. Wolford field tested the items and they tested positive for cocaine, Officer Palmer informed Appellant's wife about the test results and that the items were found in the basement. Officer Palmer testified that upon hearing where the items were found Appellant and his wife "both excitedly said, you are not checking the basement[,]" which "really raised [his] suspicions[.]" After conferring with Sgt. Wolford, Officer Palmer told Appellant and his wife they were checking the basement.
 {¶ 36} Around the same time Officer Palmer's warrant checks on the couple came back and Appellant had an active warrant so he was placed under arrest and put into a patrol car. Soon after that, Appellant's wife stated that she knew Appellant did drugs, but that he left the residence when he did it. Appellant's wife then gave consent to search the basement. Officer Palmer went to the basement and noticed a box with an open lid with several used and unused needles in it; he also found a metal pipe; a chore boy; tubes; and clear baggies, some with knots, all with a white powdery substance.
 {¶ 37} Officer Palmer testified on cross-examination that he didn't know how long the items had been in the basement, but they did not have a lot of dust on them.
 {¶ 38} The State's exhibits were admitted into evidence and the State rested its case. The State's exhibits included a BCI report that showed that the glass pipe recovered from the basement tested positive for cocaine and that residue from two of the clear baggies tested positive for cocaine. Appellant then made a Crim.R. 29 motion and the trial court denied the motion as to the possession of cocaine and possession of drug abuse paraphernalia, but granted it on the child endangering charge. A recess was held and Appellant rested his case without presenting any testimony or evidence.
 {¶ 39} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the trial court clearly lost its way when it found Appellant guilty of possession of cocaine and possession of drug abuse paraphernalia. The record contained evidence from which the trial court could have found that Appellant knowingly possessed, either actually or constructively, cocaine and the drug abuse paraphernalia. The trial court was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Appellant's conviction was not against the manifest weight of the evidence simply because the trial court chose to believe the testimony of the State's witnesses over insinuations that the items and drugs belonged to someone else or had been in the house before Appellant moved in. Moreover, "in reaching its verdict, the [trial court] is free to believe, all, part, or none of the testimony of each witness."Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993), 86 Ohio App.3d 29, 33. As the factfinder, the trial court was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See DeHass, supra.
 {¶ 40} We are not persuaded by Appellant's argument that the evidence failed to show he possessed the illegal items and drugs. The fact that Appellant did not have drugs or items on his person at the time he was arrested does not mean that he did not possess those found in the basement of his house. As previously discussed, a person may knowingly possess a substance or object through either actual or constructive possession. State v.Hilton, 9th Dist. No. 21624, 2004-Ohio-1418, at ¶ 16. Moreover, circumstantial evidence is sufficient to establish possession. See Jenks, supra.
 {¶ 41} As a preliminary matter, we find it clear from the BCI report and the testimony that the items seized were illegal drugs and drug paraphernalia as prohibited by R.C. 2925.11 and R.C.2925.14(C)(1); therefore, the only issue remaining is possession.
 {¶ 42} We find that the trial testimony established that the drugs and drug paraphernalia were found in Appellant's basement. The testimony also showed that Appellant consented to the search of his house until he learned that the police were going to search the basement, which heightened the suspicion of the police and leads one to conclude that Appellant knew what was in the basement. Moreover, Appellant initially denied there were drugs in the house and he denied using drugs, but when confronted with the evidence to the contrary, he admitted possession of the needles and spoon with white residue on it. He also stated that the crack pipes and tubes belonged to his wife, thus implicating himself in knowledge of their existence in his basement. Adding to the evidence against Appellant, his wife told the police that he did drugs and that the drugs from the basement were his. No matter which version one believes, the evidence showed that Appellant had possession, either actual or constructive, over the drugs and drug paraphernalia found in the basement.
 {¶ 43} Based on the foregoing, this Court cannot find that Appellant's convictions were against the manifest weight of the evidence. Furthermore, as previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency."Roberts, supra at 4. Accordingly, having found that Appellant's convictions were not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Thus, we find that the trial court did not err in denying Appellant's motion for acquittal. Appellant's second assignment of error is without merit.
 III {¶ 44} Appellant's two assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Boyle, J. concurs.
Moore, J. concurs in judgment only.