DECISION AND JUDGMENT
{¶ 1} Appellant, Jose Juan Hernandez, appeals his conviction in the Lucas County Court of Common Pleas for murder, aggravated burglary and aggravated robbery. For the reasons that follow, we affirm.
 {¶ 2} The events leading to appellant's arrest took place in the early morning hours of January 20, 2006, when a group of men broke into the home of Joshua Bennett, *Page 2 
intending to rob him. Bennett responded with gunfire leaving one of the men severely wounded and ultimately killing John Reece. Appellant was John Reece's friend. He was indicted for the murder of John Reece, the aggravated burglary of Bennett's home and the aggravated robbery of Bennett. A jury convicted him on all counts on November 13, 2006. He was sentenced to serve a prison term of 15 years to life for the murder conviction, plus an additional term of three years of actual incarceration for a gun specification, which was to be served consecutive and prior to his indefinite term of imprisonment. He was sentenced to serve seven years in prison for aggravated burglary and aggravated robbery. Appellant now appeals setting forth the following assignments of error:
 {¶ 3} "I. The trial court erred by allowing other acts evidence to be heard by the jury. Specifically, that at a prior date, the residence Hernandez and his fiancé´ shared was raided by police and black tar heroin, cash, and guns were seized. None were connected to the crime for which Hernandez was charged, and that unrelated drug case was still pending.
 {¶ 4} "II. The trial court violated Hernandez' right to due process by removing him from the trial, not permitting him to confront the witnesses against him, and by only permitting him to return if he wore ankle cuffs to restrain him.
 {¶ 5} "III. The trial court erred by failing to address and evaluate Hernandez' request for new appointed counsel even though his concerns were specific and, if true, were very serious. *Page 3 
 {¶ 6} "IV. The verdicts against Hernandez are legally insufficient because the state did not prove Hernandez acted knowingly, did not prove all statutory elements, and did not prove that the death of Reece was foreseeable.
 {¶ 7} "V. The verdicts were against the manifest weight of the evidence.
 {¶ 8} "VI. Hernandez' trial counsel was ineffective, thereby violating Hernandez' constitutional right to representation by competent counsel.
 {¶ 9} "VII. The trial court could not constitutionally impose sentences for the aggravated burglary, murder, and the aggravated robbery convictions that were not the minimum, and were not imposed concurrently.
 {¶ 10} "VIII. Hernandez' right to a speedy trial was violated.
 {¶ 11} "IX. The trial court committed plain error pursuant to Crim. R. 52(B) by giving the jury incorrect instructions, including ones for complicity and attempt, when Hernandez was not charged with, nor convicted of, either.
 {¶ 12} We will initially consider appellant's fourth and fifth assignments of error wherein he alleges that his conviction is supported by insufficient evidence and that his conviction is against the manifest weight of the evidence.
 {¶ 13} The Ohio Supreme Court has ruled that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997),78 Ohio St.3d 380, 386. "Sufficiency" pertains to a question of law as to whether the evidence is legally adequate, as to all the elements of the crime, to support a jury verdict. Id. Reviewing the sufficiency of the evidence to *Page 4 
support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. However, under a manifest weight standard, an appellate court sits as the "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. Thompkins at 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983),20 Ohio App.3d 172. While an appellate court may determine that a judgment is sustained by sufficient evidence, it may still conclude that the judgment is against the weight of the evidence. (Citations omitted.) Id.
 {¶ 14} Because sufficiency is required to take a case to a jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. Lakewood v. Dorton, 8th Dist. No. 81043, 2003-Ohio-1719, ¶ 32, citing State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. *Page 5 
 {¶ 15} Valerie Hedrick testified that she was John Reece's girlfriend. On the evening of January 19, 2006, she was with Reece, Brian Hartford, Brandon Klein, William Klink, Mike Madrid and appellant at appellant's house. She testified that she heard the group discussing ways they could obtain money fast. The group decided to rob Joshua Bennett because they believed he had a lot of money and drugs in his possession. At approximately 10:00 p.m., the group left to rob Bennett, and Hedrick waited for them at appellant's house. A few hours later, Brian Hartford came back to appellant's house and told Hedrick that Reece had been shot.
 {¶ 16} Brian Hartford testified that he drove the group out to Joshua Bennett's house. Hartford thought at first that the group was going there to buy marijuana. When he learned they planned to rob Bennett, Hartford testified that he tried to extricate himself from the group. He decided to stay with them as their driver after they called him derogatory names. When they arrived at the house, appellant and Reece told Hartford where to park and threatened physical harm if Hartford did not wait for the men to return. Within minutes of their arrival, Hartford heard gunshots and a scream. Appellant, Reece and Klink came back to the van. Reece said he had been shot. Appellant said that Brandon Klein and Mike Madrid had also been shot. Appellant instructed Hartford not to wait for Klein and Madrid despite Hartford's protestations.
 {¶ 17} Hartford began driving towards the hospital. He testified that appellant told him to tell the hospital personnel that Reece had been shot in a drug deal gone bad and that only Hartford and Klein had been with him. Appellant and Klink jumped out of the *Page 6 
van before Hartford reached the hospital. Hartford dropped Reece off at the hospital and went back to appellant's house to pick up Valerie Hedrick and take her to the hospital. He testified that, the next morning, the police informed him that Reece had died. Hartford initially told police that only himself, Reece and Klein had been involved. When Toledo Police Detective Elizabeth Kantura told Hartford that she believed he was lying, Hartford testified that he told her that appellant, Klink and Madrid were also involved. Hartford eventually pleaded guilty to aggravated robbery as a result of this incident. At the time of his testimony, he had not been sentenced.
 {¶ 18} Brandon Klein testified that in January 2006, he was living with appellant and supporting himself by selling heroin. Klein testified that the group decided to rob Bennett because they lost approximately $12,000 in cash when the police raided their home that month. Appellant told Klein that Bennett had a lot of money and that he would be unarmed. Klein took a gun to Bennett's house. He testified that appellant opened the back door with a screw driver. Klein went into the house first, followed by John Reece. Klein brandished the gun and told Bennett and his girlfriend to lie on the floor. As a dog approached, Klein pointed his gun at the dog. At that point, Bennett pulled out a gun. Klein shot at Bennett first but missed him. Bennett shot Klein in the left leg. Klein then dropped his gun and ran out of the house. Bennett shot Klein again outside. Klein testified that he yelled for help but that appellant, Reece, Madrid and Klink ran back to the van. Klein crawled to some buildings behind Bennett's house to hide. He was eventually found by a deputy sheriff and transported to a hospital. Later, Klein was *Page 7 
contacted by appellant who told him to tell the police that only Klein and Reece had been involved in a drug deal gone wrong and that no one else had been there with them.
 {¶ 19} Appellant was found guilty of murder with a firearm specification. The elements are as follows:
 {¶ 20} "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." R.C. 2903.02(B).
 {¶ 21} Appellant was found guilty of aggravated burglary, a violation of R.C. 2911.11 and a felony of the first degree. The elements are as follows:
 {¶ 22} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure, as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:
 {¶ 23} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 {¶ 24} "(2) The offender has a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;
 {¶ 25} "(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present." *Page 8 
 {¶ 26} Appellant was also found guilty of aggravated robbery in violation of R.C. 2911.01.(A)(1). The elements are as follows:
 {¶ 27} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 28} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *"
 {¶ 29} As to the argument addressing the sufficiency of the evidence, appellant contends that the state failed to prove that appellant knowingly trespassed into an occupied structure with purpose to commit a theft offense. We find that given the above testimony, any rational trier of fact could have found the essential elements of aggravated burglary proven. Appellant also contends that the evidence was insufficient to prove he had a gun as the evidence shows that Klein carried the gun into Bennett's house. This argument is flawed in that an unarmed accomplice to a crime is subject to the same prosecution and punishment as the principal offender under R.C. 2923.03(F).
 {¶ 30} Regarding the manifest weight question, the trier of the facts, in this case the jury, chose to believe the witnesses who testified that Reece was shot after he and appellant willingly broke into to Joshua Bennett's house with the intent to commit a theft offense. This is a matter of credibility within the province of the trier of facts, not for this court upon appeal. On review, we cannot say that the jury clearly lost its way or *Page 9 
perpetrated a manifest miscarriage of justice. Accordingly, appellant's fourth and fifth assignments of error are found not well-taken.
 {¶ 31} In his first assignment of error, appellant contends that the court erred in admitting other acts evidence. Specifically, the jury heard testimony that shortly before the aggravated burglary of Bennett's home, appellant's home was raided by police who seized approximately $12,000 and firearms.
 {¶ 32} Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evid. R. 404(B). However, such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Id. For evidence regarding scheme, plan, or system to be admissible under Evid. R. 404(B), the evidence must be inextricably related to the crime and form an immediate background that serves as the foundation to the crime. State v. Cotton (1996), 113 Ohio App.3d 125,133. Also, when other acts demonstrate criminal conduct, they should be so blended or connected with the act on trial that proof of one incidentally involves the other, explains the circumstances thereof, or tends logically to prove an element of the crime charged. State v.Roe (1989), 41 Ohio St.3d 18, 23-24, citing State v. Wilkinson (1980),64 Ohio St.2d 308, 317. The exceptions allowing the evidence "must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." State v. Broom (1988),40 Ohio St.3d 277, paragraph one of the syllabus. Nevertheless, the admission of such evidence lies within the broad discretion of *Page 10 
the trial court and should not be overturned absent an abuse of discretion that has created material prejudice. State v. Conway,109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing, State v. Issa (2001),93 Ohio St.3d 49, 64. As such, our inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably in allowing the admission of the other crimes, wrongs, or acts, in this case. Conway, ¶ 62, citing, State v. Barnes (2002),94 Ohio St.3d 21, 23.
 {¶ 33} The testimony regarding a police raid at appellant's house was admissible for purposes of motive. Brandon Klein testified that the reason the group wanted to break into Bennett's house and rob him was to replace the money the police had recently seized in the raid. Finding no abuse of discretion, appellant's first assignment of error is found not well-taken.
 {¶ 34} In his second assignment of error, appellant contends that he was denied a fair trial when he was excluded from a portion of his trial and was required to attend the remainder of the trial in leg restraints.
 {¶ 35} The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." Accordingly, the United States Supreme Court has held that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Illinois v. Allen (1970), 397 U.S. 337, 338, 90 S.Ct. 1057,25 L.Ed.2d 353. In Ohio, this constitutional guarantee is embodied in Crim. R. 43(A), which mandates the presence of the defendant *Page 11 
"at * * * every stage of the trial * * *," and Crim. R. 43(B), which provides that a hearing or trial may be conducted without the defendant's presence only if the "defendant's conduct in the courtroom is so disruptive that [the proceeding] cannot reasonably be conducted with his continued presence * * *."
 {¶ 36} In addition, the Ohio Supreme Court has held that a defendant's presence at his own trial is mandatory, "absent waiver of his rights or other extraordinary circumstances, at every stage of his trial."State v. Williams (1983), 6 Ohio St.3d 281, 286. Such a waiver may be found to exist on the basis of a defendant's disruptive behavior only if, after the defendant has been warned that his behavior may result in removal from the courtroom, "he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."Allen, supra at 343. Even after a defendant is removed for disruptive or disrespectful behavior as outlined above, the court must give the defendant an opportunity to return if he promises to conduct himself in a proper manner. Id. at 344.
 {¶ 37} The presence of restraints tends to erode the indicia of innocence to which the accused is entitled, and the usual practice is for a defendant to appear in court while free of shackles. State v.Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, State v. Woodards (1966),6 Ohio St.2d 14. However, it is widely accepted that a prisoner may be shackled when there is danger of violence or escape. Woodards,6 Ohio St.2d at 23. The decision to impose such a restraint is left to the sound discretion of the trial court. Id. *Page 12 
 {¶ 38} The record shows that on the second day of appellant's trial, the trial judge was informed by court security that appellant threatened to obstruct the proceedings. Deputy Martin of the Lucas County Sheriffs Department testified that while he was transporting appellant to the courtroom, appellant told him he was unhappy with his attorney and that he wanted a new one. Deputy Martin reminded appellant that he had already asked the trial judge for new counsel and that the request was denied. Deputy Martin testified that appellant told him that if he has to start a fight with his attorney in the courtroom to get the judge to appoint him a new attorney, he would. When asked about this threat, appellant agreed that he had made the threat. When appellant refused to stop complaining about his attorney, the trial judge informed him that for the safety of his attorney and others in the courtroom, he would be forced to sit in a separate room while the trial continued without him. In the room, appellant would be provided with headphones to hear the testimony and he would be able to communicate with his attorney. Appellant refused to go to the room and instead, insisted that he be taken back to the county jail. The trial judge explained to appellant that by refusing to go to the other courtroom, he was voluntarily removing himself from his own trial. On his way back to the jail, appellant physically struggled with security officers. The trial resumed without him. Below is but a small portion of the exchange between appellant and the trial judge before he was removed from the courtroom.
 {¶ 39} "Appellant: I do not want him as an attorney. I do not trust him."
 {¶ 40} "The Judge: Sir, listen to me right now." *Page 13 
 {¶ 41} "Appellant: He's best friends with the prosecutor. He ain't come to see me in two months. * * * How can he represent me?"
 {¶ 42} "The Judge: Sir, listen to me, please, right now."
 {¶ 43} "Appellant: He doesn't know nothing about my case."
 {¶ 44} "The Judge: Would you listen? If I can't get you to commit to being quiet like you were yesterday, we're going to have to go into * * * an obstreperous defendant's room, which means no one can hear you and you can carry on like a crazy person."
 {¶ 45} "Appellant: I won't go in there."
 {¶ 46} "The Judge: You will if I order you to go in there."
 {¶ 47} "Appellant: I won't sit there."
 {¶ 48} "The Judge: All right. Look, am I going to get a commitment from you to behave or not?"
 {¶ 49} "Appellant: No, I won't. I don't want him as an attorney. What do I got to do to get another attorney?"
 {¶ 50} "The Judge: You're not going to get another attorney at this time."
 {¶ 51} "Appellant: Why not?"
 {¶ 52} "The Judge: Because I said so."
 {¶ 53} The transcript in this case shows that appellant was disruptive, defiant and disrespectful to the judge. Appellant admitted he intended to purposely disrupt his trial to get what he wanted. The judge offered him the option of remaining a part of his trial while she protected the rest of the courtroom from his antics but appellant himself *Page 14 
insisted on being removed from the proceedings entirely. Later on that same day and, after only one witness had testified, the judge had appellant brought back to the courtroom. Once again, the judge instructed appellant on appropriate courtroom behavior. Appellant agreed to abide by the judge's instructions and the judge in turn agreed to allow appellant to be present in his trial. She also allowed appellant to remove his hand cuffs although, she required him to wear leg restraints which could not be seen by the jury.
 {¶ 54} As stated by the United States Supreme Court in Illinois v.Allen, supra at 343-344,
 {¶ 55} "[t]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations"
 {¶ 56} In our view, appellant in this case was not denied a fair trial. It was incumbent upon the judge to balance the rights of a defendant that had threatened physical violence with the need for safety in the courtroom. As such, she provided appellant with a viable alternative which he refused to accept. It should be noted that appellant was only absent from his trial for a few hours until the judge had him brought back to once again give him a chance to abide by the courtroom rules. When he agreed, the judge accommodated him by allowing him to appear without handcuffs. Given appellant's previous threat and his physical struggles with court security outside the *Page 15 
courtroom, we cannot fault the judge for requiring him to remain in leg restraints, especially since such restraints were not visible to the jury. Finding no abuse of discretion, appellant's second assignment of error is found not well-taken.
 {¶ 57} In his third assignment of error, appellant contends that the trial court erred in failing to consider his request for newly appointed counsel.
 {¶ 58} "The right to counsel guaranteed by the Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution does not always mean counsel of one's own choosing.State v. Marinchek (1983), 9 Ohio App.3d 22, 23. The right to counsel must be balanced against the public's right to prompt, orderly and efficient administration of justice. Moreover, the right of a defendant to select his own counsel is inherent only in the cases where the accused is employing counsel himself. Thurston v. Maxwell (1965),3 Ohio St.2d 92, 93. Therefore, the right to have counsel assigned by the court does not impose a duty on the court to allow the defendant to choose his own counsel. In fact, to discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel. State v. Coleman (1988), 37 Ohio St.3d 286, paragraph four of the syllabus, certiorari denied (1988), 488 U.S. 900,109 S.Ct. 250, 102 L.Ed.2d 238." State v. Bowman (Dec. 21, 1990), 3d Dist. No. 3-89-18. The decision whether to discharge court-appointed counsel is within the trial court's sound discretion. State v.Dukes (1986), 34 Ohio App.3d 263. *Page 16 
 {¶ 59} The record shows that in September 2006, appellant filed a motion seeking to have his court-appointed attorney fired. The trial court denied his motion in October 2006. On the second day of his trial, appellant once again asked the judge to fire his court-appointed counsel and she once again denied his request. The judge stated:
 {¶ 60} "[F]rankly, I observed [appellant's] demeanor throughout the months leading up to the trial and I am convinced that any problems that he's encountering with [his attorney] he would encounter with someone else as well. I think it has a lot more to do with [appellant's] personality than it has to do with anything else. * * * [N]o other lawyer was going to be able to satisfy him either."
 {¶ 61} Appellant contends, in this assignment of error, that his request for new counsel was ignored by the court. The record shows that appellant's contention is simply not true. The judge ruled on a motion and again addressed the issue in open court, carefully explaining her reasons for not granting appellant's request. We do not find that the judge abused her discretion in denying appellant's request for new counsel. Appellant's third assignment of error is found not well-taken.
 {¶ 62} In his seventh assignment of error, appellant contends that his non-minimum sentence violates the Ex Post Facto Clause of the United States Constitution and that the holding in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, is unconstitutional. This court has previously held that Foster does not violate the Due Process Clause, the Ex Post Facto Clause, or the Separation of Powers Clause. See State v.Coleman, 6th Dist. No. S-06-023, 2007-Ohio-448; State v. Barber, 6th Dist. No. WD-06-036, *Page 17 2007-Ohio-2821; State v. Warren, 6th Dist. No. L-07-1057, 2008-Ohio-970, citing State v. Harvey, 6th Dist. No. WD-07-006, 2008-Ohio-73. Appellant's seventh assignment of error is found not well-taken.
 {¶ 63} In his eighth assignment of error, appellant contends that his right to a speedy trial was violated. R.C. 2945.71(C)(2) provides, in pertinent part:
 {¶ 64} "A person against whom a charge of felony is pending:
 {¶ 65} "(2) Shall be brought to trial within two hundred seventy days after the person's arrest."
 {¶ 66} In addition, under R.C. 2945.71(E), if a person is held in prison in lieu of bail, each day that person is incarcerated counts as three days toward the 270 day limit. Thus, when the triple count provision applies, a defendant must be brought to trial within 90 days. This time begins to accrue the day after the arrest. Crim. R. 45(A). If a defendant is not brought to trial within this period, R.C. 2945.73(B) mandates a defendant's discharge.
 {¶ 67} "When reviewing a speedy trial question, the appellate court must count the number of delays chargeable to each side and then determine whether the number of days not tolled exceeded the time limits under R.C. 2945.71." State v. Barnett, 12th Dist. No. CA2002-06-011, 2003-Ohio-2014. R.C. 2945.72 supplements R.C. 2945.71, and tolls the length of time during which an accused felon must be brought to trial. R.C. 2945.72 relevantly provides: *Page 18 
 {¶ 68} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by:
 {¶ 69} "* * *
 {¶ 70} "E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;"
 {¶ 71} Appellant acknowledges that the record contains two documents signed by him which state that he is willingly waiving his speedy trial rights. The documents appellant signed specifically state: "[N]o threats or promises have been made to encourage or force me into waiving. It is my free and willing act * * *"
 {¶ 72} Appellant contends that despite the language of the documents, he signed them under duress and they are therefore invalid. We disagree. Appellant has presented no evidence to support his contention. Accordingly, appellant's eighth assignment of error is found not well-taken.
 {¶ 73} In his ninth assignment of error, appellant contends that the court erred in instructing the jury on complicity and attempt. Additionally, appellant contends that the court erred in failing to instruct the jury on other acts evidence.
 {¶ 74} Initially we note that appellant did not object to the jury instructions. The failure to object to jury instructions constitutes a waiver of that issue absent plain error. State v. Bridge, 3d Dist. No. 1-06-30, 2007-Ohio-1764, ¶ 19, citing State v. Underwood (1983),3 Ohio St.3d 12, 13. "Under the plain error standard, the appellant must *Page 19 
demonstrate that, but for the error, the outcome of his trial would clearly have been different." Id. ¶ 20, citations omitted.
 {¶ 75} Appellant focuses on the fact that he was not charged with either complicity or attempt. This, however, is irrelevant for purposes of this assignment of error. A court's jury instructions should contain plain, unambiguous statements of the law, which are applicable to the case and evidence presented to the jury. Marshall v. Gibson (1985),19 Ohio St.3d 10, 12. The jury instructions provided by the trial court must be confined to the issues raised by the pleadings and the evidence.Becker v. Lake Cty. Mem. Hosp. W. (1990), 53 Ohio St.3d 202.
 {¶ 76} Under R.C. 2923.03(A), complicity requires that a person "aid or abet another in committing the offense" with the same culpability required for conviction of the offense. Aid or abet means "supported, assisted, encouraged, cooperated with, advised, or incited." 4 Ohio Jury Instruction (2000) 573, Section 523.03(8). The intent to aid or abet "may be inferred from the circumstances surrounding the crime."State v. Johnson (2001), 93 Ohio St.3d 240.
 {¶ 77} R.C. 2923.03(F) gives sufficient notice to defendants that a complicity instruction may be given to the jury. State v. Herring
(2002), 94 Ohio St.3d 246, 251. Under R.C. 2923.03(F), "a charge of complicity may be stated in terms of this section, or in terms of the principal offense." Thus, if established, a defendant may be charged with complicity even when the indictment for the principal offense does not mention complicity. State v. Hand, 107 Ohio St.3d 378, 404. *Page 20 
 {¶ 78} Given the evidence before the court, we find that a jury instruction on the offense of complicity was applicable to the facts of this case. As to the court's instruction on attempt, this too was a relevant instruction as "attempt" is one of the elements of the aggravated burglary statute.
 {¶ 79} Finally, appellant contends that the court should have instructed the jury on the use of "other acts" evidence. As discussed above, the jury in this case heard testimony regarding a prior police raid executed at appellant's house. In view of the lengthy, consistent testimony pertaining to appellant's involvement in the home invasion of Bennett's residence days later, appellant cannot show that the outcome of his trial would have been different had the jury received a limiting instruction regarding the other acts evidence. Appellant's ninth assignment of error is found not well-taken.
 {¶ 80} In his sixth assignment of error, appellant contends he was denied effective assistance of counsel. The standard for determining whether a trial attorney was ineffective requires appellant to show: (1) that the trial attorney made errors so egregious that the trial attorney was not functioning as the "counsel" guaranteed appellant under theSixth Amendment, and (2) that the deficient performance prejudiced appellant's defense. Strickland v. Washington (1984), 466 U.S. 668,686-687. In essence, appellant must show that the proceeding, due to his attorney's ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693. Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the *Page 21 
wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. Id. at 689. A properly licensed attorney in Ohio is presumed to execute his or her duties in an ethical and competent manner. State v. Hamblin (1988), 37 Ohio St.3d 153,155-156.
 {¶ 81} Appellant has cited numerous instances of alleged ineffective counsel. We reject all of his arguments for the reasons that follow.
 {¶ 82} First, appellant contends that his counsel was ineffective in failing to file a motion to suppress statements he made to Toledo Police Detective, Elizabeth Kantura.
 {¶ 83} "Failure to file a suppression motion does not constitute per se ineffective assistance of counsel." State v. Madrigal,87 Ohio St.3d 378, 389, 2000-Ohio-448, quoting Kimmelman v. Morrison (1986),477 U.S. 365, 384, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305, 325. "Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based upon the record, the motion would have been granted."State v. Kuhn, 9th Dist. No. 05CA008859, 2006-Ohio-4416, ¶ 11, citingState v. Robinson (1996), 108 Ohio App.3d 428, 433.
 {¶ 84} State's exhibit 102, admitted into evidence and played for the jury, was a videotape of Detective Kantura's interview with appellant shortly after Reece was killed. Appellant has not directed us to anything in particular during his interview that would have likely been suppressible. We have reviewed the videotape wherein appellant is read his Miranda rights and he enthusiastically agrees to speak with Detective Kantura. *Page 22 
Detective Kantura then conducts the interview in a professional manner. Based on this evidence, it cannot be said that a motion to suppress would have been granted.
 {¶ 85} Appellant contends that his counsel was ineffective in allowing appellant to waive his speedy trial rights. We have already determined in appellant's eighth assignment of error that appellant voluntarily chose to waive his speedy trial rights. Appellant also contends that his counsel was ineffective in failing to object to the jury instructions and in failing to request an involuntary manslaughter instruction. We have already determined in appellant's ninth assignment of error that the jury instructions were acceptable and applicable to the facts in this case. Next, appellant contends his counsel was ineffective in failing to object to "other acts" evidence. We have already determined in appellant's first assignment of error that said evidence was admissible.
 {¶ 86} Appellant contends that his counsel used unnecessary, explosive words in describing the burglary such as "big boy gun," "fire-fight" and "battle." Appellant has shown no evidence that he was prejudiced by his counsel's use of these words. More importantly, debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49, certiorari denied (1980), 449 U.S. 879.
 {¶ 87} Finally, appellant contends that his counsel was ineffective for his limited, direct questioning of defense witness, Jessica Garza, and for his failure to object to certain jurors. These matters are also debatable trial tactics which, in reviewing, we must *Page 23 
defer to counsel's judgment. State v. Clayton, Id. Appellant's sixth assignment of error is found not well-taken.
 {¶ 88} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Arlene Singer, J., William J. Skow, P.J., Thomas J. Osowik, J., Concur. *Page 1